REID, Judge.
The plaintiff James Johnson filed this suit against E. B. Smelley Jr., C. P. Brous-sard, Time Finance Adjusters of Baton Rouge and the National Finance Adjuster for $2645.45 with legal interest from judicial demand until paid. The suit is for this amount as damages for repossessing a 1957 eight cylinder Chevrolet pickup truck without the plaintiff’s permission or authority and without any Court order or proceedings, or any written surrender agreement.
There was no service made on E. B. Smelley Jr., but the defendants C. P. Brous-sard and Time Finance Adjusters of Baton Rouge filed an answer denying any wrongful seizure of the truck but alleged that plaintiff was indebted unto the Morris Plan Company of California in the sum of $811.92 which amount was secured by a mortgage on the truck. The defendants further alleged that on October 15, 1960 Broussard, acting as the authorized agent of the Morris Plan Company of California, did repossess plaintiff’s truck, a 1957 pickup Chevrolet truck, motor number U357S102252, after having discussed the condition of plaintiff’s account with him, and took possession of said vehicle with the voluntary knowledge and consent of plaintiff, with the further understanding that said truck would be held for his account for a period of 30 days to give plaintiff the opportunity to pay off the mortgage.
Plaintiff filed a supplemental and amended petition adding Morris Plan Company of California as a defendant and asked for judgment in solido against all defendants.
The Morris Plan Company of California filed an exception of insufficient service of process, insufficiency of citation, and lack of jurisdiction over the person of the defendant and lack of jurisdiction over the subject matter of the suit. The matter was tried and the Lower Court rendered judgment in favor of the defendants, rejecting plaintiff’s demand and dismissing his suit, at his costs. From this judgment the plaintiff has brought this appeal.
Plaintiff contends that Mr. Broussard presented him with a Card identifying him as a representative of the Time Finance Adjusters of Baton Rouge. On the back of this card is written “Sheriff Johnson 8325.” He testified that he could only sign his name and that he had refinanced his truck with the Morris Plan. He testified that he did not know how much he had borrowed, did not know how much money he had received and that' he had paid them $39.00. He said that when Mr. Broussard came to see him he identified himself and he had *295 another man with him. He stated that Broussard asked him his name and on being informed that he was James Johnson they told him that they came to either get the truck or to get the money. He said that he did not have any money right then but that if they would allow him a chance to store it he could get it. He further testified that he wanted them to store it in Amite with the Hood Motor Company but he would not sign any paper. He stated that Mr. Broussard informed him that he could not store it in Amite but would take it to Baton Rouge, he told him “some place but I don’t know what place it was, and I never could find it.” He testified that Mr. Broussard let him take his things out of the back of the truck before he took it, and that he then took his tools out. He persisted that he did not let Mr. Broussard take the truck.
Plaintiff produced another witness Mattie Mae Cole who lived at 315 West Oak Street, Amite, Louisiana, and it was in front of her place where his truck was parked when it was picked up by Mr. Broussard. She testified that she was on the outside and saw the two gentlemen, Mr. Broussard and Mr. Faust who was with him, although she did not identify them by name, stop at Mr. Eichol’s who has a sandwich shop next door. They asked him something, and then waited until plaintiff arrived and identified themselves and informed him that they were after his truck, or some money, or something or other. She did not understand the whole conversation but she understood plaintiff to say that he did not have any money. She testified that they got up and walked over to the truck parked near her house, and she saw plaintiff unloading the truck, but she did not hear the conversation. She testified that they gave him a paper to sign and that he refused to sign it. She stated that one of the men got in the truck and the other in the car and they drove off.
Plaintiff further testified as to his humiliation about having his truck taken away from him.
Mr. Broussard first on cross examination by the plaintiff and then testifying in his own behalf denied that he took the truck or used any pressure on the plaintiff to get it from him. He did admit that he asked him to sign a release but that plaintiff refused to do so. He testified that he had discussed the matter with a Deputy Sheriff and that he had handed the card filed in the record to the plaintiff. He denied that the word “Sheriff Johnson” was written on it when he gave it to him, and denied saying that he had told Johnson that the Sheriff sent word that he was to pick the car up. Broussard further testified that he first showed Johnson a telegram and Johnson informed him that he did not have any money, that he had been sick, hurt and he was expecting some money any time and would be able to take care of the payments. He could not state when he would get the money but that he was expecting it. He further testified that he asked Johnson whether 30 days would be sufficient time for him to get the money and Johnson said “yes”, and that he informed him that he would take the truck back to Baton Rouge and store it and that he could pick up the truck whenever he brought his account current. He then asked Johnson to sign the release which he refused to do. He stated that Johnson pulled the keys out of his pocket on a ring and took the keys off of the ring and took his tool box keys off the ring and unlocked the tool box on the fender of the truck, took the tools out and that he helped him carry his tools to the back: He further stated that he bought himself and Johnson an ice cream and that Johnson accepted it. He then brought the truck to Baton Rouge, and had no further connection with it. He denied emphatically that he had written the words “Sheriff Johnson 8325” on the back of the card but that he gave him the card so that Johnson could contact him when he got the money and that he would help him pick up the truck.
Fred R. Eichol, a witness for the defendant, testified that he- operated a business, 314 West Oak Street, which adjoins the Mattie Mae Cole property. He stated that *296 on October 15, 1960 Mr. Broussard and Mr. Faust parked their car in front of his business and asked him if he knew James Johnson. He informed them that he did but that he had not seen him lately. They asked him to identify Johnson if he saw him, and .about 45 minutes later he saw Johnson standing in front of the place of business, roughly 80 or 90 feet west of his business. He identified him and Broussard and Faust then went to Johnson and identified themselves to him. He further testified that after a few minutes talking, they came to the truck which was parked about 40 feet west of his window. He did not hear or understand the conversation but after the men came to the truck and talked for about 40 minutes when he saw Johnson take his tools and personal belongings out of the truck, and that the conversation was of a rather mild nature, no harsh words occurred, no nature of force or threat could be heard, and in fact there was a little laughing and joking and talking. After the plaintiff got his tools out of the truck Broussard came to his (Eichols) place of business and ordered ice cream for himself and for Johnson. He testified that just before they left Johnson pulled something out of his pocket, he did not know whether it was keys or what it was and gave it to Mr. Faust. Mr. Faust then got in the truck and drove off. Fie further testified that Johnson claimed that he had put some gasoline in the truck and that Broussard gave Johnson some money to reimburse him for the gas which he had supposedly just put in the truck. He did not know the amount. He stated further on cross examination that Johnson would not sign any release.
Plaintiff took the Stand in rebuttal and on cross examination denied at first that he had attempted to borrow money to bring his payments up to date. Johnson repeatedly stated that he could not borrow money because he did not have the truck.
Mr. Eichol was recalled to the Stand and testified that a few days after the truck was gone Johnson came to him and sought to borrow $250.00 from him, which he stated was to get his truck back. He did not know how much it would take to reclaim the truck but that Johnson wanted $250.00.
After this Johnson on rebuttal admitted that he had asked Eichol to lend* him the money but he did not remember it at the time he previously testified. He did not remember how much he had asked Eichol to let him have.
Plaintiff assigns two errors of facts in law. First, the District Court erred in not finding that there was wrongful possession, or wrongful seizure, and second, it erred in not assessing damages for the wrongful taking.
The plaintiff in his brief cites case of Price v. General Motors Acceptance Corporation, La.App., 95 So.2d 834. This is an Opinion handed down by our Brethren of the Second Circuit and it does hold that where a finance company held a chattel mortgage on an automobile and the mortgagor was behind in his installments and the finance company told the mortgagor to pay up the delinquent installments and did not ask mortgagor for permission to repossess the automobile and the mortgagor refused to execute written acquiescence or surrender and merely permitted repossession of the automobile without any active show of opposition, the finance company was guilty of a wrongful act in repossessing the automobile and was liable in damages to the mortgagor.
The testimony of Mr. C. P. Broussard one of the defendants in regard to the picking up of this truck is as follows:
“I said, O.K. I will take the truck back to Baton Rouge and store it and your truck will be in the same condition as it is right now and you come in and pick up the truck, plus the charges and you can have it. So, he said, O.K. you can have the truck, and I said, Well you sign the release so in case you don’t pick the truck up you will be relieved from all your obligations on the truck, and he said, No, I don’t sign anything for anybody. I said, Well we will have to take the truck then.”
*297 We believe this brings this case under the Price case, supra. The Court in the Price case, supra, held as follows:
“However, in the instant case we find there was no use of force, coercion or threat on the part of defendant’s agent. The crucial point, as far as the defense is concerned, lies in the fact that plaintiff permitted the repossession without any show of active opposition. We think it appropriate to call attention to the fact that lack of opposition, under the facts of this case, cannot be construed as voluntary acquiescence, and, as a result, it must be concluded that defendant was guilty of a wrongful act in taking the automobile.”
We therefore conclude that defendants wrongfully repossessed the truck from the plaintiff and are liable for damages herein.
With regard to the damages the only evidence in the record as to the value of the truck is that it is worth $1250.00. We, therefore, believe this to be a fair value on the truck at the time of the illegal taking. The truck, however, was subject to a mortgage in favor of The Morris Plan Company of California for $811.92. This was payable in 24 monthly installments of $33.83. According to the receipt book or coupon book filed in evidence there had been payments made totaling the sum of $272.78. Deducting the sum of $272.78 from the amount of the mortgage $811.92 leaves a balance due of $539.14.
We have deducted this amount of $539.14 from the value fixed, $1250.00 which leaves a balance recoverable in this case of the sum of $710.86. Plaintiff also asks for damages for humiliation and embarassment. We do not feel from the evidence that plaintiff was very much embarrassed as a result of this wrongful possession of his truck. We believe that an award in the amount of $100.00 will cover this situation and be adequate.
For the foregoing reasons it is ordered that the judgment of the Lower Court be reversed and judgment rendered in favor of plaintiff and against the defendant C. P. Broussard in the total amount of $810.86 with legal interest from judicial demand until paid and all costs of this suit.
Reversed and rendered.